IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 09, 2015

IN RE EVE C. [1]

Appeal from the Juvenile Court for Rutherford County
No. TC2340     Donna Scott Davenport, Judge

_____

No. M2014-01420-COA-R3-PT – Filed April 29, 2015

_____

Mother, whose daughter was placed in custody of the Department of Children's Services at birth, appeals the termination of her parental rights on grounds of substantial non-compliance with the permanency plans and persistence of conditions. Finding no error, we affirm the termination of Mother's rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P. J., M. S., and W. NEAL MCBRAYER, J. joined.

Carla Kent Ford, Murfreesboro, Tennessee, for the appellant, Jenine M. C.

Herbert H. Slatery, III, Attorney General and Reporter; and Mary Byrd Ferrara, Assistant Attorney General, Nashville, Tennessee, for the appellee, State of Tennessee Department of Children's Services.

**OPINION**

Eve C. was born in August, 2011 to Jenine M. C. ("Mother") and Fortunato C. ("Father"); she was born at Vanderbilt Medical Center with a heart condition that required open heart surgery shortly after birth and constant monitoring and care during her stay at Vanderbilt and following her release. Three other children of Mother and Father had been removed from the family home and were in the custody of the Department of Children's Services ("DCS") at the time of Eve's birth. The day after her

_____

[1] This Court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

birth DCS received a referral raising concerns regarding the ability of Mother and Father to care for Eve and subsequently initiated a proceeding in Rutherford County Juvenile Court to have her declared dependent and neglected due to her medically fragile condition and the inability of Mother and Father to care for her. On September 20 the court entered a Protective Custody Order giving DCS temporary custody of Eve, and on November 16 the court entered an order approving a permanency plan for the four children.[2] Additional permanency plans were prepared on April 13, 2012, September 24, 2012, January 22, 2013, and August 22, 2013; each plan was approved by the court.

The permanency plans required Mother and Father to participate in a parenting assessment; complete a psychological evaluation and follow recommendations; complete anger management sessions; attend the children's medical appointments; develop and demonstrate appropriate parenting skills; regularly visit the children; provide a safe, stable, and clean home; and demonstrate financial stability and maintain a budget. As respects Eve's special needs, the plans required Mother and Father to: demonstrate the skills needed to monitor, track, adjust and administer treatments and care for Eve and otherwise show that they could consistently meet her needs; take all opportunities offered and independently seek out ways to learn how to care for her; and keep a clean, neat home free from health hazards or health concerns.

On October 2, 2013, DCS filed a Petition for Termination of Parental Rights and for Order of Full Guardianship, seeking to terminate Mother and Father's parental rights to Eve on the grounds of substantial noncompliance with the permanency plans (Tenn. Code Ann. § 36-1-113(g)(2)) and persistence of conditions (Tenn. Code Ann. § 36-1-113(g)(3)). Guardians ad litem were appointed for Eve and for Mother, and CASA was appointed special advocate for Eve; counsel was appointed Mother and Father.

A trial was held before the Juvenile Court of Rutherford County on seven days between March 12 and April 15, 2014.[3] The court heard testimony from Charles H., Mother's paramour; Amanda G., Eve's physical therapist; Ashley P., Eve's occupational therapist; Trisha H., Eve's speech and feeding therapist; Meredith W., family services worker with DCS; Courtney H., an LPN; Ebony L., Eve's DCS case manager; Amanda P, Lisa S., Hillard H., and Lori T., employees of Kids First, an agency which provided various services to Mother and Father; Gwen L., the children's resource parent; Rick H., home care nurse; and Mother. On May 19 the court announced its ruling from the bench,

---

[2] Eve was placed in the resource home in which Mother and Father's other children were living; the four children have remained in the home throughout these proceedings. The parental rights to the other children are not at issue in this appeal.

[3] Father surrendered his parental rights on the first day of trial; consequently, his parental rights are not at issue in this appeal.

and on June 20 entered an order terminating Mother's parental rights to Eve on the grounds of substantial non-compliance with the permanency plans and persistence of conditions; the court also found that termination of Mother's rights was in Eve's best interest.

Mother appeals the termination of her rights, contending that she did not receive necessary assistance from DCS to allow her to comply with the permanency plans.

## I. STANDARD OF REVIEW

A parent has a fundamental right to the care, custody, and control of his or her child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996). Thus, the state may interfere with parental rights only if there is a compelling state interest. *Nash-Putnam*, 921 S.W.2d at 174–75 (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)). Our termination statues identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." *In re W.B.*, 2005 WL 1021618, at *7 (citing Tenn. Code Ann. § 36-1-113(g)). A party seeking to terminate the parental rights of a biological parent must prove at least one of the statutory grounds for termination. Tenn. Code Ann. § 36-1-113(g); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). Secondly, the party must prove that termination of the parental rights of the biological parent is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(2).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. *Santosky*, 455 U.S. at 766–69; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Thus, both the grounds for termination and the best interest inquiry must be established by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c)(1); *In re Valentine*, 79 S.W.3d at 546. In light of the heightened standard of proof in these cases, a reviewing court must adapt the customary standard of review set forth by Tenn. R. App. P. 13(d). *In re M.J.B.*, 140 S.W.3d 643, 654 (Tenn. Ct. App. 2004). As to the court's findings of fact, our review is *de novo* with a presumption of correctness unless the evidence preponderates otherwise, in accordance with Tenn. R. App. P. 13(d). *Id.* We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Id.*

## II. SUBSTANTIAL NON-COMPLIANCE

Tennessee Code Annotated § 36-1-113(g)(2) authorizes termination of parental rights for failure to comply with a permanency plan as follows:

> (2)   There has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan or a plan of care pursuant to the provisions of title 37, chapter 2, part 4;

The standards to be applied by courts in considering termination of parental rights cases based on noncompliance with permanency plans, as well as our review of such cases, were discussed by the Supreme Court in *In re Valentine*.  The trial court must find that the requirements of the permanency plan that the parent allegedly did not satisfy are "reasonable and related to remedying the conditions which necessitate foster care placement." *In re Valentine,* 79 S.W.3d at 547 (quoting Tenn. Code Ann. § 37-2-403(a)(2)(C)).  Noncompliance with requirements in a permanency plan that are neither reasonable nor related to remedying the conditions that led to the removal of the child from the parent's custody is not relevant for purposes of Tenn. Code Ann. § 36-1-113(g)(2). *In re S.H.*, No. M2007-01718-COA-R3-PT, 2008 WL 1901118, at *7 (Tenn. Ct. App. Apr. 30, 2008) (no Tenn. R. App. P.11 application filed).  In addition, for noncompliance to justify the termination of parental rights, it must be "substantial"; mere technical noncompliance by itself is not sufficient to justify the termination of parental rights. *Id*. Also, the parent's degree of noncompliance with a reasonable and related requirement must be assessed. *Id.* The issue of substantial noncompliance with the requirements of a permanency plan is a question of law; therefore, it is reviewed *de novo* with no presumption of correctness. *In re Valentine,* 79 S.W.3d at 546.

The court recounted the testimony of the witnesses, particularly the testimony relating to Eve's particularized medical needs and the importance of Mother's being able to demonstrate the ability to provide for those needs.  The court made a specific finding that DCS provided "Herculean efforts and services, including . . . multiple evaluations, independent counseling, therapeutic visitation, financial assistance . . . case management services throughout the two and half years of State Custody[,] facilitated services and assessments[,] and held numerous Child and Family team meetings."  The court noted that Kids First provided therapeutic visitation, including having Rich H. and Courtney H. participate in the therapeutic visitation with Mother and assist in demonstrating to Mother how to care for Eve's special needs.  Having reviewed the evidence, we agree with the court's factual findings, including the findings that the services provided by DCS were

4

appropriate for the situation presented.[4]  While Mother argues that DCS did not provide Mother all she needed in order to comply with the responsibilities and to accomplish the desired outcomes under the permanency plans, the evidence clearly shows that DCS' assistance was well in excess of what is required.[5]

As to Mother's compliance with the permanency plans, the court held:

> Mother, as stated in the findings of fact, is in substantial non-compliance with the permanency plans admitted as exhibits at the trial of this matter.  Mother was aware of the requirements of the permanency plans.  Pursuant to the findings of fact DCS made reasonable efforts to assist the Mother in the completion of her tasks and responsibilities, including the desired outcomes and action steps in furtherance of the same.

> Therefore based upon all of the aforementioned, the evidence presented, the Exhibits presented, and the other findings herein, the Court finds, by clear and convincing evidence, finding in fact and by conclusions of law, that the Ground of Substantial Noncompliance with the Permanency Plan, pursuant to T.C.A. § 36-1-113(g)(2) and T.C.A. 37-2-403, etc., per the evidence, testimony and proof admitted, does exist against the Mother, [], and that her parental rights should therefore be terminated to the Child, Eve [C.].  Therefore finding that the State has proven/established, by clear and convincing evidence, a Ground for the termination of the Mother's parental rights to the Child, Eve.

---

[4]  The court held:

> Per the findings of fact and applying the applicable statutory authority, specifically Tenn. Code Ann. §36-1-113(g)(2) and T.C.A. § 37-2-403, etc., the Court finds that the requirements and statement of responsibilities under the permanency plans for the Mother were clearly reasonable and related to remedying the conditions that warranted and necessitated the continued need for foster care for the Child, Eve. The goals and requirements of the plan were reasonably related to addressing the need for foster care.

[5]  In *In re Giorgianna H.,* 205 S.W.3d 508 (Tenn. Ct. App. 2006), this court explained what is required of the Department of Children's Services in providing assistance to families facing challenges similar to those presented here:

> While the Department's efforts need not be 'herculean', the Department must do more than simply provide the parents with a list of services and send them on their way. . . . The Department's employees must use their superior insight and training to assist the parents in addressing and completing the tasks identified in the permanency plan. . . .

205 S.W.3d at 519 (citations and footnotes omitted).  *See also* Tenn. Code. Ann. § 37-1-166(g)(1).

In its oral ruling and in the order terminating Mother's rights the court made extensive findings of fact. Significant in our *de novo* review of those findings is the court's adverse credibility finding as to Mother and the determination of weight to be given her testimony.[6]

The evidence in the record clearly shows that Mother understood the requirements outlined in the permanency plans, as well as the Criteria & Procedures for Termination of Parental Rights, understood the consequences of her failure to comply, and made attempts to comply with some of the requirements. What is equally clear is that, as found by the court, Mother was not able to acquire and exhibit the skills to take care of Eve which were integral to the permanency plans. The evidence shows that, in the two years since Eve's birth, Mother failed to accomplish the objectives of the permanency plans, which were specifically directed toward addressing the conditions that led to Eve's placement in DCS custody and to address the necessity of providing for her medical needs. The evidence cited by Mother does not preponderate against the findings of the court; the entire evidence clearly and convincingly supports the court's holding that Mother was in substantial non-compliance with the requirements of the permanency plans.

---

[6] The order recites:

> Regarding credibility the Court finds that [Mother] has lost all credibility with this Court. Mother has lied to the Department. She hasn't kept the clerk or this Court informed of her correct address, misleading this Court and the parties that she was still residing with her husband [Father] when in fact she was residing with her paramour across the street from the marital home . . . . Mother admitted in this matter that she misled the Court in her prior testimony because Father told her to; so there were domestic violence issues that she lied about. There were issues about this boyfriend/paramour that she lied about that were very evident in the proceedings, that she misled the Department and this Court, as well as to what she was doing in her life and trying to fight for Eve. That her credibility is zero with this Court due to all of the inconsistencies that we found in her testimony and her deceit to the Department and to the Court about her life especially from that June 2013 date forward. Mother for 3 to 4 months beginning June, 2013 was basically living two lives, the one where she is living with her paramour and the other life where she had led everyone, DCS, the Court, etc., to believe with her husband. Therefore the Court finds, finding in fact and by conclusions of law, by clear and convincing evidence a lack of credibility as to the Mother. Accordingly the Court gives greater weight to the witnesses of the State and less weight to the Mother's testimony and the testimony of her paramour.

The evidence supports the court's findings and Mother does not take issue with the court's credibility determination.

## III. PERSISTENCE OF CONDITIONS

Parental rights may be terminated on the basis of "persistence of conditions" as defined by Tenn. Code Ann. § 36-1-113(g) (3)(A) when:

The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:

(A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;

(B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and

(C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home;

A termination proceeding based on the persistence of conditions ground requires a finding by clear and convincing evidence of all three statutory factors. *In re Valentine*, 79 S.W.3d at 549.

The trial court's determination that the conditions which led to Eve's placement with DCS as well as other conditions which indicated the potential for neglect persisted was based in large part on many of the factors discussed above relative to Mother's inability in the two years since Eve's birth to create a home environment conducive to reunification with Eve and to acquire and demonstrate the skills necessary to address Eve's medical needs. We agree with the trial court that Mother's lack of progress in addressing these deficiencies also shows that the conditions persisted, within the meaning of Tenn. Code Ann. § 36-1-113(g)(3)(A). Significant also is the fact that, by the time of trial, Mother had left her husband and was living with her paramour, who was providing for her financial needs; Mother offered no evidence that she had any other means of support.

Mother contends that this ground should not be sustained because there were no actions on her part that resulted in the finding of dependent and neglect, which led to Eve's placement in DCS custody; she argues that the removal "was based solely in there

not being two (2) people who could be trained by Vanderbilt prior to the minor child leaving the hospital." Contrary to her insistence, the record shows that many other conditions led to the initial referral to DCS following Eve's birth and that other conditions, particularly the turbulent relationship between Mother and Father which resulted in the three older children being removed, had the potential to subject Eve to neglect. The preponderance of the evidence fully supports the holding that the conditions persisted and would not be remedied.

## IV. BEST INTEREST

Once a ground for termination has been proven by clear and convincing evidence, the trial court must then determine whether it is the best interest of the child for the parent's rights to be terminated, again using the clear and convincing evidence standard. The legislature has set out a list of factors at Tenn. Code Ann. § 36-1-113(i) for the courts to follow in determining the child's best interest.[7] The list of factors in the statute is not exhaustive, and the statute does not require every factor to appear before a court can find

---

[7] The factors at Tenn. Code Ann. § 36-1-113(i) are:

In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:
(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;
(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;
(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or
(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

that termination is in a child's best interest. *See In re S.L.A.*, 223 S.W.3d 295, 301 (Tenn. Ct. App. 2006) (citing *Tenn. Dep't of Children's Servs. v. T.S.W.*, No. M2001-01735-COA-R3-CV, 2002 WL 970434, at *3 (Tenn. Ct. App. May 10, 2002); *In re I.C.G.*, No. E2006-00746-COA-R3-PT, 2006 WL 3077510, at *4 (Tenn. Ct. App. Oct. 31, 2006)).

The trial court made extensive findings in holding that termination of Mother's parental rights was in Eve's best interest; Mother does not contest that holding on appeal. We have reviewed the proof and have determined that the court properly considered the statutory factors and that the evidence cited by the court clearly and convincingly establishes that termination of Mother's parental rights is in Eve's best interest and will allow her to receive the stability and attention to her medical condition that she needs.

## V. CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
RICHARD H. DINKINS, JUDGE